# **EXHIBIT 1**

**49D01-2104-PL-013118**

Marion Superior Court 1

Filed: 4/19/2021 1:40 PM
Clerk
Marion County, Indiana

STATE OF INDIANA
IN THE MARION COUNTY SUPERIOR COURT

| | |
|---|---|
| UNIVERSITY OF NOTRE DAME DU LAC, | |
| Plaintiff, | CAUSE NO. |
| v. | |
| HCC SPECIALTY UNDERWRITERS, INC. d/b/a TOKIO MARINE HCC, TOKIO MARINE AMERICAN INSURANCE COMPANY and HOUSTON CASUALTY COMPANY, | |
| Defendants. | |

## **COMPLAINT**

Plaintiff University of Notre Dame du Lac ("Notre Dame"), for its complaint against Defendants HCC Specialty Underwriters, Inc. d/b/a Tokio Marine HCC ("HCC Specialty"), Tokio Marine American Insurance Company ("Tokio Marine"), and Houston Casualty Company ("Houston Casualty") (collectively, the "Insurers"), states as follows:

### **Introduction**

1.      This is an action for declaratory relief and breach of contract concerning insurance. Pursuant to Trial Rule 57 and the Indiana Declaratory Judgment Act, Indiana Code § 34-14-1 *et seq*., Notre Dame seeks a judgment (1) declaring the scope of Insurers' obligation to pay Notre Dame's losses under an event cancellation policy, Policy No. 18/7009248 (the "Policy"), which provides annual policy limits of $60,600,000, related to lost revenues due to the COVID-19 pandemic, and (2)

awarding to Notre Dame all damages to which it is due as a result of the Insurers'
breach of the Policy.  A true and accurate copy of the Policy is attached hereto as
**Exhibit A**.

### The Parties

2.      Notre Dame is a private Catholic research university located in Notre
Dame, Indiana.

3.      HCC Specialty is a Massachusetts insurance company doing business in
Indiana.

4.      Tokio Marine is a New York insurance company doing business in
Indiana.

5.      Houston Casualty is a Texas insurance company doing business in
Indiana.

### Jurisdiction and Venue

6.      This Court has jurisdiction over the Insurers under Trial Rules 4.4(A)(1)
and (6) because the Insurers conduct business in Indiana and because the Insurers
contracted to insure a risk located within the State of Indiana.

7.      Marion County Commercial Court is a preferred venue for this action
because HCC Specialty and Tokio Marine have registered agents in Marion County,
Indiana.

8.      Under Section IV, 17 of the Policy, the Insurers expressly agreed to
"submit to the jurisdiction of any Court of competent jurisdiction within the United
States."

2

## Factual Circumstances

### Notre Dame

9.      Founded in 1842, Notre Dame is recognized as one of America's leading universities, particularly for undergraduate education.

10.     Notre Dame is also renowned for its intercollegiate football team which competes in the FBS Subdivision of NCAA Division 1 football. Notre Dame has won 11 national championships and boasts an all-time winning percentage of .729, ranking second among FBS programs.

11.     Notre Dame Stadium has a capacity of 77,622. Between 1973 and 2019, Notre Dame had a home sellout streak of 273 straight games which ranks as the second-longest sellout streak in the history of NCAA football.

12.     Notre Dame's football team is one of only seven independent programs in the FBS. Notre Dame's football program has never historically been a member of a conference.

13.     As an independent, Notre Dame consistently competes against opponents from the Big Ten Conference, the Atlantic Coast Conference ("ACC"), and the Pacific-12 Conference ("Pac-12"). It also competes against teams from the Southeastern Conference ("SEC"), Big 12 Conference, and other conferences.

14.     In 2013, Notre Dame and the ACC agreed to an arrangement in which the ACC took in Notre Dame as a full conference member in all sports except football and ice hockey. Under this arrangement, Notre Dame guaranteed the ACC that Notre Dame would play five football games annually with ACC-member institutions.  This

benefitted the ACC while allowing Notre Dame the flexibility to maintain its historic independence in football.

**Event Cancellation Insurance**

15.  In the spring of 2018 Notre Dame purchased the Policy, an event cancellation policy for its 2018, 2019, and 2020 football seasons from Tokio Marine/Houston Casualty. This was a renewal of an earlier 3-year policy and Notre Dame had purchased similar three-year policies for many years. The Policy term was from June 22, 2018 through December 1, 2020 and provided limits of $181,800,000, with an annual limit of $60,600,000.

16.   The annual premium for the Policy was $270,200.

**The Pandemic**

17.   In January 2020, the first known case of a U.S. resident infected by the novel SARS-CoV-2 coronavirus was reported in the state of Washington. SARS-CoV-2 quickly spread across the United States.

18.   SARS-CoV-2 is a coronavirus that is believed to be primarily spread through respiratory droplets, airborne transmission, and by fomite—objects and surfaces contaminated by the respiratory droplets.

19.   SARS-CoV-2 is believed to spread mainly through close contact from person to person, including between people who are physically near each other (within six feet).

20.   SARS-CoV-2 reportedly has an incubation period of 2-12 days, during which time it can be transmitted even before symptoms develop. Symptoms often

4

include fever, cough, shortness of breath, and, in severe cases, pneumonia. The illness caused by SARS-CoV-2 is called COVID-19 (Coronavirus Disease 2019).

**The Impact of COVID-19**

21.    On March 2, 2020, Notre Dame contacted Willis Towers Watson ("WTW"), the insurance broker for the Insurers who issued the Policy, to request information regarding the potential application of the Policy in the event of an altered 2020 football season due to growth of the COVID-19 outbreak.

22.    WTW responded by stating, in part, "**given that we have a multi-year placement, there is nothing that Insurers can do to modify coverage or pricing until the end of the three year policy.**" (Emphasis added).

23.    On March 6, 2020, Indiana Governor Eric Holcomb issued Executive Order 20-02, which declared that a public health emergency existed throughout the State of Indiana as a result of the COVID-19 outbreak in the United States and a confirmed report that SARS-CoV-2 was in Indiana.

24.    On March 11, 2020, the World Health Organization declared COVID-19 to be a global pandemic.

25.    On April 6, 2020, WTW requested that Notre Dame provide the 2020 projected revenue schedule. This request was similar to WTW's request in 2019, on behalf of the Insurers, to identify the 2019 Notre Dame football schedule and projected revenue.

26.    On April 6, 2020, Notre Dame provided WTW with the 2020 revenue schedule, which depicted projected revenue for each Notre Dame home game,

including a matchup between Notre Dame and the University of Wisconsin, deemed a "home game" for Notre Dame though scheduled to be played at Lambeau Field in Green Bay, Wisconsin.

27.    On April 14, 2020, Notre Dame sent WTW a projected revenue breakdown and on May 12, 2020 provided a revenue worksheet that showed projected ticket revenue, premium seating ticket revenue, premium seating annual fees and season tickets rights fees.

28.    Notre Dame's original 2020 schedule included the following insured events under the Policy:

      a.  Notre Dame vs. the University of Arkansas on September 12, 2020;

      b.  Notre Dame vs. Western Michigan University on September 19, 2020;

      c.  Notre Dame vs. the University of Wisconsin on October 3, 2020 (at Lambeau Field in Green Bay, Wisconsin);

      d.  Notre Dame vs. Stanford University on October 10, 2020;

      e.  Notre Dame vs. Duke University on October 31, 2020;

      f.  Notre Dame vs. Clemson University on November 7, 2020; and

      g.  Notre Dame vs. the University of Louisville on November 21, 2020.

29.    On June 11, 2020, Governor Holcomb issued Executive Order 20-32 which prohibited all public or private meetings or gatherings in excess of 250 individuals and imposed social distancing requirements on all permissible meetings and gatherings through at least July 3, 2020. On July 1, 2020, Governor Holcomb extended the prohibition of meetings in excess of 250 individuals through July 17, 2020.

30.    On July 9, 2020, the Big Ten announced it would go to a conference-only season for all fall sporting events, including football, due to the COVID-19 pandemic. The Big Ten's decision resulted in the cancellation of the October 3, 2020 football game between Notre Dame and the University of Wisconsin at Lambeau Field in Green Bay, Wisconsin.[1]

31.    On July 10, 2020, the Pac-12 announced that its football teams would play a conference-only schedule. Notre Dame's October 10, 2020 matchup against Stanford University was cancelled due to the Pac-12's modified schedule.[2]

32.    On July 29, 2020, the ACC announced its 2020 football schedule in which each member would play ten conference games and one non-conference contest. With other Power Five conferences leaning toward conference-only schedules, Notre Dame took the unprecedented step of joining the ACC as a temporary football member in order to ensure a 2020 football season would take place. Under this arrangement, Notre Dame would become a temporary member of the ACC for the 2020 football season and share the proceeds of Notre Dame's television rights deal with NBC for its home football games with the other 14 ACC institutions.

33.    On July 30, 2020, the SEC announced that its football teams would play a conference-only schedule. The SEC's decision to prohibit non-conference contests

---

[1] On August 11, 2020, the Big Ten announced the cancellation of all fall sports, including football. The Big Ten later reversed course and announced a conference-only football schedule with an October 23, 2020 start date.

[2] The Pac-12 announced that it cancelled its 2020 fall football season on August 10, 2020. On October 3, 2020, the Pac-12 reversed course and announced a seven-game, conference-only football schedule commencing on November 7, 2020.

resulted in the cancellation of the Notre Dame vs. University of Arkansas originally scheduled for September 12, 2020.

34.     On August 8, 2020, the Mid-America Conference postponed all of their Fall 2020 sporting events, which precluded the Notre Dame vs. Western Michigan University game originally scheduled for September 19, 2020.

**The Claim**

35.     On August 10, 2020, Notre Dame sent a notice of claim letter to the Insurers. A true and accurate copy of the notice of claim letter is attached as **Exhibit B.** The Insurers acknowledged receipt of Notre Dame's claim and assigned claim number #17315.

36.     After taking significant steps to arrange a complete and strong schedule of football games to mitigate its losses despite many variables outside of its control, Notre Dame provided WTW and the Insurers with a tentatively-revised schedule on August 10, 2020. Under the revised slate, Notre Dame was tentatively scheduled to play the following games at Notre Dame Stadium:

   a.  Notre Dame vs. Duke University on September 12, 2020;

   b.  Notre Dame vs. Western Michigan University on September 19, 2020;

   c.  Notre Dame vs. Florida State University on October 10, 2020;

   d.  Notre Dame vs. the University of Louisville on October 17, 2020;

   e.  Notre Dame vs. Clemson University on November 7, 2020; and

   f.  Notre Dame vs. Syracuse University on December 5, 2020.

37.     Because the Notre Dame vs. Western Michigan University matchup was cancelled due to the MAC's decision to postpone its 2020 football season, Notre Dame sought to fill the September 19, 2020 open date. On August 27, 2020, Notre Dame announced it would play the University of South Florida on September 19, 2020, at Notre Dame Stadium, filling the open date caused by the cancellation of Western Michigan University's 2020 season.

38.     On July 16, 2020, Governor Holcomb issued Executive Order 20-36 which required that all sporting events where attendance is expected to exceed 250 individuals must have an event plan approved by local health officials before proceeding. On July 30, 2020, Governor Holcomb extended these restrictions on attendance at sporting events through August 27, 2020. On August 26, 2020, Governor Holcomb extended the prohibition on gatherings of more than 250 individuals (unless otherwise authorized by a local health department official) through September 25, 2020.

39.     On August 28, 2020, Dr. Mark Fox of the St. Joseph County Health Department authorized a maximum of 15,000 individuals in Notre Dame Stadium for any intercollegiate football games during the 2020 season. This number was inclusive of team members, coaches, and stadium support staff. This authorization was expressly conditioned on Notre Dame:

      a.  Implementing provisions to maintain physical distancing between "family units";

      b.  Requiring mask wearing for spectators at all times;

 c. Limiting attendance, to the greatest extent possible, to individuals who already resided in St. Joseph County or the surrounding region;

 d. Prohibiting "tailgating" in parking areas near Notre Dame Stadium;

 e. Instructing ushers to remove spectators who were not complying with the mask requirement;

 f. Using mobile ticketing rather than printed tickets;

 g. Undertaking all reasonable efforts to limit congregation of fans on entering and leaving the stadium, as well as at concessions and restrooms; and

 h. Preparing and distributing concessions in accordance with plans subject to review by the St. Joseph County Department of Health.

40. On September 11, 2020, Notre Dame provided WTW and the Insurers with a copy of the updated 2020 football schedule which reflected its efforts to mitigate its losses and arrange for the replacement of Notre Dame's originally-scheduled football games cancelled due to the COVID-19 pandemic and public health measures taken to control it.

41. In navigating its revised schedule in the midst of the unprecedented public health measures taken to control the COVID-19 pandemic, Notre Dame incurred significant expenses in organizing, running and providing services for its replacement home football games. These expenses include, but are not limited to, the cost of ACC-mandated medical testing and housing for Notre Dame players subject to quarantine and/or isolation protocols.

10

**The Policy**

42.    The Insurers sold Notre Dame the Policy, an event cancellation policy, Policy No. 18/7009248, with an effective date of June 22, 2018, through December 31, 2020.

43.    The Policy provides Event Cancellation Coverage and Extra Expense coverage for seven insured football games originally scheduled to take place during the 2020 college football season. The Policy provides $60,600,000 in coverage to Notre Dame for the losses suffered when Notre Dame was forced to arrange for a replacement schedule due to the cancellation of its original 2020 schedule and significantly curtail attendance at Notre Dame Stadium under the various governmental orders.

44.    The Policy's Insuring Agreement provides:

[The Insurers] will indemnify [Notre Dame], up to the Limit of Insurance, for your loss as a direct result of **cancellation**[3], **abandonment**[4], **curtailment**[5], **postponement,** or **relocation** of the **insured event**[6] to which this insurance applies.

(Ex. A, at 7.)

45.    The Policy provides that subject to the limit of insurance, the Insurers will indemnify Notre Dame for the greater of:

---

[3] **Cancellation** is defined as Notre Dame's "inability to commence the **insured event** at the regularly scheduled date and time of commencement of the **insured event**." (Ex. A, at 9.)

[4] **Abandonment** is defined as Notre Dame's "inability to keep open the **insured event** during a period subsequent to regularly scheduled date and time of commencement of the **insured event**." (Ex. A, at 9.)

[5] **Curtailment** is defined as Notre Dame's "inability to open or keep open the **insured event** for its original published duration, size or scope." (Ex. A, at 9.)

[6] **Insured event** is defined as "the event or events covered by this policy as shown in the Declarations or in the attached schedule of insured events." (Ex. A, at 10.)

1. The total of expenses incurred, less any recoveries obtained, and less gross revenue retained after refunds, whether such refunds are contractual or voluntary; or

2. The loss of gross revenue (including gross revenue returned, whether contractual or voluntary) that would have been received had the insured event taken place as originally scheduled, less any recoveries made and expenses not incurred.

(Ex. A, at 7.)

46.     The Policy defines **Expenses** as Notre Dame's "costs and charges in organizing, running and providing services for the insured event." (Ex. A, at 10.)

47.     The Policy defines **Gross Revenue** as "all monies paid or payable to you from every source arising out of the insured event." (Ex. A, at 10.)

48.     The Policy also provides:

**D. EXTENSION OF COVERAGE:**

**Extra Expense** – If a loss applies, this policy is extended to include direct and necessary additional **expenses** incurred by you over and above the total costs that would normally have been incurred to conduct the **Insured Event** in order to continue the normal operations of the **insured event**, subject to prior written approval by us. The Limit of Insurance for this Coverage is included in the Limit of Insurance shown in the Declarations. However, in the event the Limit of Insurance is exhausted, we will pay an additional limit, up to $100,000 or a higher amount if agreed to by us and evidenced by an endorsement attached to and forming a part of this Policy.

(Ex. A, at 8.)

**Notre Dame's Submission of Loss Information**

49.     By letter dated November 16, 2020, Notre Dame submitted to the Insurers information and documentation supporting its claim for the total loss of gross revenue relating to the cancellation, abandonment, curtailment, postponement

and/or relocation of Notre Dame's 2020 football season. Notre Dame's submission also reflected its expected saved expenses and its Extra Expenses as defined in the Policy. As a result of its documented damages, Notre Dame made a Policy limits demand requesting payment of the full annual limits plus the full amount of Extra Expenses as per the Extension of Coverage under the Policy.

50.     On March 9, 2021, Notre Dame provided the Insurers with updated information and supporting documentation detailing Notre Dame's losses. The updated claim for the total loss of gross revenue relating to the cancellation, abandonment, curtailment, postponement or relocation of Notre Dame's 2020 football season totaled well in excess of the Policy annual limits.

51.     On February 9, 2021, WTW sent Notre Dame an endorsement that purports to modify the terms of the Policy. Endorsement #4, which was provided to Notre Dame for the first time on February 9, 2021, has a claimed "Effective Date" of June 1, 2020 and a claimed "Date of Issue" of June 16, 2020. Specifically, Endorsement #4 purports to narrow the definition of Gross Revenue under the Policy such that Gross Revenue would be limited to ticket revenue. True and accurate copies of the February 9, 2021 email and Endorsement are attached hereto as **Exhibit C**.

52.     By letter dated February 22, 2012, the Insurers issued a reservation of rights letter which asserted the applicability of Endorsement #4. A true and accurate copy of the Insurers' letter is attached hereto as **Exhibit D**.

53.     For multiple reasons, Notre Dame disputes that Endorsement #4 applies to this claim or reduces the amount payable under the Policy.

54.     Notre Dame has paid all required premiums and performed all conditions precedent for obtaining coverage under the Policy and timely notified the Insurers of the losses. The Insurers have not agreed to cover all of Notre Dame's covered losses.

55.     As of the date of this Complaint being filed the Insurers have failed to pay any of Notre Dame's claims and damages, which are covered by the Policy.

## Causes of Action

### Count 1:  Declaratory Relief

56.     Notre Dame incorporates by reference the averments of Paragraphs 1 through 55 above.

57.     An actual controversy exists as to the scope of Notre Dame's rights and the Insurers' obligations under the Policy.

58.     The Policy provides coverage for Notre Dame's losses and damages.

59.     The Insurers' failure to timely pay all of the covered losses has caused and will continue to cause substantial harm to Notre Dame as long as these losses remain unpaid.

60.     This declaratory judgment action is necessary and useful in determining all of the rights and responsibilities of the parties.

61.     Pursuant to Indiana Code § 34-14-1-1 and Rule 57 of the Indiana Rules of Trial Procedure, Notre Dame is entitled to declaratory relief establishing that the losses suffered by Notre Dame are covered by the Policy.

14

### Count 2: Breach of Contract

62.     Notre Dame incorporates by reference the averments of Paragraphs 1 through 61 above.

63.     The Policy obligates the Insurers to indemnify Notre Dame for its losses related to the impact of the COVID-19 pandemic on the 2020 football season.

64.     The Insurers have refused to fully honor their obligations, in breach of the Policy.

65.     As a result of the Insurers' breach, Notre Dame has incurred substantial losses and expenses related to the COVID-19 pandemic.

66.     Notre Dame is entitled to an award of its losses resulting from the COVID-19 pandemic, up to policy limits, consequential damages arising from the Insurers' breach of the Policy, and prejudgment interest on all such costs.

WHEREFORE, Notre Dame prays that the Court enters judgment against HCC Specialty Underwriters, Inc., Tokio Marine American Insurance Company, and Houston Casualty Company, and in favor of Notre Dame:

A.      declaring that the Policy provides coverage for Notre Dame's claims;

B.      finding that the Insurers have breached their contractual obligations;

C.      ordering the Insurers to pay Notre Dame all amounts owed under the terms of the Policy; and

D.      awarding Notre Dame all other compensatory, consequential and other damages to which it may be entitled, including but not limited to prejudgment

interest, the attorneys' fees and expenses incurred in bringing this action to enforce

the Policy, and all other and further relief as this Court may deem proper.

Respectfully submitted,


/s/ George M. Plews
Attorneys for Plaintiff University of Notre
Dame du Lac

George M. Plews, #6274-49
Christopher J. Braun, #19930-49
Aaron J. Brock, #34996-49
**PLEWS SHADLEY RACHER & BRAUN LLP**
1346 North Delaware Street
Indianapolis, Indiana 46202
Tel: (317) 637-0700
Fax: (317) 637-0710
gplews@psrb.com
cbraun@psrb.com
abrock@psrb.com

**49D01-2104-PL-013118**

Marion Superior Court 1

Filed: 4/19/2021 1:40 PM
Clerk
Marion County, Indiana

**TOKIO MARINE**
**HCC**

Houston Casualty Company
13403 Northwest Freeway, Houston, TX 77040 USA
Tel: 713-744-9695

Event Cancellation Policy

# for The University of Notre Dame du Lac

by Specialty Group



**POLICY NUMBER:   18/7009248**

This insurance effected on behalf of:

The University of Notre Dame du Lac
C113 Joyce Center
Notre Dame, IN 46556

provided for:

**EVENT CANCELLATION INSURANCE**

**As per attached terms and conditions**

by:

**HOUSTON CASUALTY COMPANY**
13403 Northwest Freeway
Houston, Texas  77040
Telephone:  (713) 462-1000
Facsimile:   (713) 462-4210

President and CEO                    Secretary

In Witness Whereof, the Company has executed and attested these presents but this policy shall
not be valid unless signed by a duly authorized representative of the Company.

**ALL CLAIMS TO BE REPORTED IMMEDIATELY TO HOUSTON CASUALTY COMPANY**

Attaching to and forming part of
Houston Casualty Company Policy No. 18/7009248

# EVENT CANCELLATION POLICY

**NOTICE: THIS POLICY PROVIDES INDEMNIFICATION COVERAGE ONLY. WE WILL REIMBURSE YOU FOR LOSS COVERED UNDER THE TERMS AND CONDITIONS OF THIS POLICY.**

## DECLARATIONS

Policy Number: 18/7009248                    Renewal of: 15/7005905

Item 1.    NAMED INSURED AND ADDRESS:
The University of Notre Dame du Lac
C113 Joyce Center
Notre Dame, IN 46556

Item 2.    POLICY PERIOD:

From:  June 22, 2018                    To: December 1, 2020
12:01 AM.,  standard time at the address of the Named Insured as stated herein.

Item 3.  LIMIT OF INSURANCE:    **$181,800,000** in all

Item 4.  PREMIUM: $719,700, plus $90,900 Terrorism, plus $20,265 IN.Surplus Lines Tax

Item 5.  PREMIUM DUE DATE: $270,200, plus $6,755 IN Surplus Lines Tax due 7/1/18;
$270,200, plus $6,755 IN Surplus Lines Tax due 7/1/19; and $270,200, plus $6,755 IN Surplus Lines Tax due 7/1/20

Premium is payable on or before the premium due date above or per the Schedule of Insured Events.

## SCHEDULE OF INSURED EVENTS:

| Insured Event | Event Date(s) | Premium Due Date | Premium | Venue | Limit of Insurance |
|---|---|---|---|---|---|
| See attached Schedule of Insured Events | See attached Schedule of Insured Events | See Item 5 above | See Item 4 above | See attached Schedule of Insured Events | $181,800,000 |

**For insured events and venues not shown here, see attached Schedule of Insured Events.**

HOUSTON CASUALTY COMPANY

By: _____
AUTHORIZED REPRESENTATIVE OR COUNTERSIGNATURE
(In states where applicable)
Issue Date: August 6, 2018

Attaching to and forming part of
Houston Casualty Company Policy No. 18/7009248
Schedule of Insured Events
Page 1 of 1

## 2018 SCHEDULE OF INSURED EVENTS

| Insured Event | Event Date(s) | Premium Due Date | Venue | Limit of Insurance |
|---|---|---|---|---|
| 1) Michigan | 9/1/2018 | Item 5-Declarations | Notre Dame Stadium, 2010 Moose Krause Cir, Notre Dame, IN 4655 | $12,000,000 |
| 2) Ball State | 9/8/2018 | Item 5-Declarations | Notre Dame Stadium, 2010 Moose Krause Cir, Notre Dame, IN 4655 | $7,200,000 |
| 3) Vanderbilt | 9/15/2018 | Item 5-Declarations | Notre Dame Stadium, 2010 Moose Krause Cir, Notre Dame, IN 4655 | $7,200,000 |
| 4) Stanford | 9/29/2018 | Item 5-Declarations | Notre Dame Stadium, 2010 Moose Krause Cir, Notre Dame, IN 4655 | $8,500,000 |
| 5) Pittsburgh | 10/13/2018 | Item 5-Declarations | Notre Dame Stadium, 2010 Moose Krause Cir, Notre Dame, IN 4655 | $8,500,000 |
| 6) Florida State | 11/10/2018 | Item 5-Declarations | Notre Dame Stadium, 2010 Moose Krause Cir, Notre Dame, IN 4655 | $12,000,000 |
| 7) Syracuse | 11/17/2018 | Item 5-Declarations | Yankee Stadium, 1 E 161st St, Bronx, NY 10451 | $5,200,000 |

$60,600,000

## 2019 SCHEDULE OF INSURED EVENTS

Premium: $270,200
Limit of Insurance: $60,600,000
*2019 Game Schedule to be provided 8/1/19

## 2020 SCHEDULE OF INSURED EVENTS

Premium: $270,200
Limit of Insurance: $60,600,000
*2020 Game Schedule to be provided 8/1/19

**ENDORSEMENT NUMBER**          **1**

**Attaching to and forming part of Houston Casualty Company Policy No.  18/7009248**

          **Assured:**          The University of Notre Dame du Lac

                    **It is hereby noted and agreed that:**


          **SANCTION LIMITATION AND EXCLUSION CLAUSE**


No insurer shall be deemed to provide cover and no insurer shall be liable to pay any claim or provide
any benefit hereunder to the extent that the provision of such cover, payment of such claim or
provision of such benefit would expose that insurer to any sanction, prohibition or restriction under
United Nations resolutions or the trade or economic sanctions, laws or regulations of the European
Union, United Kingdom or United States of America.


15/09/10

LMA3100

                    **All other terms and conditions remain unchanged.**


**Additional Premium:**          N/A
**Return Premium:**          N/A
**Effective Date:**          June 22, 2018
**Date of Issue:**          August 6, 2018


                    **HOUSTON CASUALTY COMPANY**

          **By**

                    **Authorized Representative**

**ENDORSEMENT NUMBER          2**

**Attaching to and forming part of Houston Casualty Company Policy No.  18/7009248**

Assured:        The University of Notre Dame du Lac

**It is hereby noted and agreed that:**

**U.S. Terrorism Risk Insurance Act, as amended in 2015**
**New & Renewal Business Endorsement**

*This Endorsement is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act, as amended in 2015", as summarized in the disclosure notice.*

In consideration of an additional premium of USD $72,720 for certified acts of terrorism and $18,180 for non-certified acts of terrorism paid, it is hereby noted and agreed with effect from inception that the Terrorism exclusion to which this Insurance is subject, shall not apply to any "insured loss" directly resulting from any "act of terrorism" as defined in the U.S. Terrorism Risk Insurance Act of 2015, as amended (TRIA).

The coverage afforded by this Endorsement is only in respect of any "insured loss" of the type insured by this Insurance directly resulting from an "act of terrorism" as defined in TRIA.  The coverage provided by this Endorsement shall expire at 12:00 midnight December 31, 2020, the date on which the TRIA Program is scheduled to terminate, or the expiry date of the policy whichever occurs first, and shall not cover any losses or events which arise after the earlier of these dates.  The Terrorism exclusion, to which this Insurance is subject, applies in full force and effect to any other losses and any act or events that are not included in said definition of "act of terrorism".

This Endorsement only affects the Terrorism exclusion to which this Insurance is subject.  All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

Furthermore the Underwriter(s) will not be liable for any amounts for which they are not responsible under the terms of TRIA (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on the Underwriter's liability for payment for terrorism losses.

**All other terms and conditions remain unchanged.**

| | |
|---|---|
| **Additional Premium:** | N/A |
| **Return Premium:** | N/A |
| **Effective Date:** | June 22, 2018 |
| **Date of Issue:** | August 6, 2018 |

**HOUSTON CASUALTY COMPANY**

By        _____
          **Authorized Representative**

TRIA SPECIALTY ENDORSEMENT 2 (1/1/15)

Attaching to and forming part of
Houston Casualty Company Policy No. 18/7009248

# EVENT CANCELLATION POLICY

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations.  The Named Insured is the only entity entitled to receive indemnification under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.  Other words and phrases that appearing in boldface print have special meaning.  Refer to Section III. – DEFINITIONS.

In consideration of the payment of the premium by you and in reliance upon the statements in your Application incorporated herein by reference, we agree with you subject to all of the terms, exclusions and conditions of this policy, as follows:

## SECTION I – INSURING AGREEMENT

### A. EVENT CANCELLATION

We will indemnify you, up to the Limit of Insurance, for your loss as a direct result of **cancellation, abandonment, curtailment, postponement, or relocation** of the **insured event** to which this insurance applies.

### B. APPLICATION OF COVERAGES:

In order for insurance to apply to Section I, all of the following conditions must be met:

1. The loss must be the direct result of an unexpected cause beyond your control;

2. the loss must not be the direct or indirect result of any excluded cause as shown in Section II. –Exclusions of this insurance; and

3. you must comply with all other terms and conditions of this policy.

### C. CALCULATION OF LOSS:

Subject to the limit of insurance, we will indemnify you for the greater of:

1. The total of **expenses** incurred, less any recoveries obtained, and less **gross revenue** retained after refunds, whether such refunds are contractual or voluntary; or

2. The loss of **gross revenue** (including **gross revenue** returned, whether contractual or voluntary) that would have been received had the **insured event** taken place as originally scheduled, less any recoveries made and **expenses** not incurred.

It is understood and agreed by us that a game appearance guarantee paid by You to a non-conference school shall be considered an expense hereunder whether it is paid contractually or on a voluntary basis regardless of any contractual agreement between You and such non-conference school.

### D. EXTENSION OF COVERAGE:

**Extra Expense** – If a loss applies, this policy is extended to include direct and necessary additional **expenses** incurred by you over and above the total costs that would normally have been incurred to conduct the **insured event** in order to continue the normal operations of the **insured event**, subject to prior written approval by us. The Limit of Insurance for this coverage is included in the Limit of Insurance shown in the Declarations. However, in the event the Limit of Insurance is exhausted, we will pay an additional limit, up to $100,000 or a higher amount if agreed to by us and evidenced by endorsement attached to and forming a part of this Policy.

**Travel Expenses to Away Games** – If an away or neutral-site game You are scheduled to play in (whether such game is an **insured event** scheduled under this policy or not) is subject to **cancellation, abandonment, curtailment, postponement,** or **relocation** for reasons covered under this policy, this policy is extended to include the loss of **expenses** incurred by You directly related to travel to such away or neutral-site game. The Limit of Insurance for this coverage is sub-limited to $250,000 per loss and $1,000,000 in all.

## SECTION II –EXCLUSIONS

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**1. War and Military Action**
   Actual or threatened war, invasion, act of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power, confiscation, nationalization, requisition or destruction of or damage to property by or under the order of any government or public or local authority.

**2. Nuclear Hazard**

   Nuclear reaction or radiation, or radioactive contamination, however caused.

   But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**3. Biological / Chemical / Nuclear**

   The actual malicious use of pathogenic or poisonous nuclear, biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

**4. Fraudulent, Dishonest or Criminal Acts**

   Any loss resulting from, or arising out of, fraudulent or dishonest or criminal act or acts committed by you or any of your employees and also others to whom property may be entrusted.

   This exclusion shall not apply to loss or damage to personal property while such property is in the custody of common carriers.

**5. Financial Failure**

   **a.** Withdrawal, insufficiency or lack of finance however caused;

   **b.** The financial failure of any venture;

   **c.** Lack of adequate receipts, sales or profits of any venture;

   **d.** Variations in the rate of exchange, rate of interest or stability of any currency;

   **e.** Financial default, insolvency, or failure to pay any person, firm or corporation.

**6. Lack of Support**

   **a.** Lack of adequate response, support or withdrawal of such support by any entity;

   **b.** Lack of, or inadequate attendance or insufficient interest prior to attendance.

**7. Failure to Make Necessary Arrangements**

Your failure to:

   **a.** make all the preliminary arrangements essential to ensure that a satisfactory **insured event** can be held on the scheduled date. Preliminary arrangements shall include arrangements as a prudent organizer would have made considering the venue size, type of event and the period of time before the open date;

   **b.** ensure all licenses, visas, permits and authorizations are current for the term of this policy, and that all contractual arrangements have been confirmed in writing; or

   **c.** observe and comply with all federal, state, or local laws, ordinances and regulations.

**8. Pre-existing Circumstances**

Circumstances existing or threatened at inception of the policy which were known to you or any of your officers, directors, partners, or risk managers as being circumstances that could possibly result in a loss under this policy, unless such circumstances were advised to us in writing by you or any of your officers, directors, partners or risk managers and we agree in writing to accept such circumstances.

**9. Contract Disputes**

Any contractual dispute or breach of a written or verbal contact or agreement by you.

## SECTION III – DEFINITIONS

**1. Abandonment** means your inability to keep open the **insured event** during a period subsequent to regularly scheduled date and time of commencement of the **insured event**.

**2. Cancellation** means your inability to commence the **insured event** at the regularly scheduled date and time of commencement of the **insured event**.

**3. Curtailment** means your inability to open or keep open the **insured event** for its original published duration, size or scope.

Attaching to and forming part of
Houston Casualty Company Policy No. 18/7009248

4. **Expenses** means your costs and charges in organizing, running and providing services for the **insured event**. **Gross revenue** means all monies paid or payable to you from every source arising out of the **insured event**.

5. **Insured event(s)** means the event or events covered by this policy as shown in the Declarations or in the attached schedule of insured events.

6. **Postponement** means the unavoidable deferment of the **insured event** to another time.

7. **Relocation** means the removal of the **insured event** to an alternative **venue**.

8. **Venue** means the location corresponding to the **insured event** where the **insured event** is scheduled to occur as shown in the Declarations.

## SECTION IV – CONDITIONS

1. **Limit of Insurance**

   The most we will pay for loss or damage is the applicable Limit of Insurance shown in the Declarations.

2. **Duties in the Event of a Loss**

   You must see that the following are done in the event of covered loss or damage:

   a. Upon the discovery of any event likely to give rise to a claim under this policy you shall give us prompt notice. Include a description of such loss;

   b. You shall at all times do all things necessary to avoid or diminish a loss under this policy;

   c. You shall cooperate with us and, upon our request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, in the investigation or settlement of the claim;

   d. Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 30 days after our request. We will supply you with the necessary forms;

   e. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

3. **Concealment, Misrepresentation or Fraud**

   This policy is void in the case of fraud by you as it relates to this policy at any time. It is also void if you, at any time, intentionally conceal or misrepresent a material fact concerning, this policy or application, or any proof of loss.

4. **Subrogation**

   We shall be subrogated to your right of recovery from any party, whether before or after payment of a loss, at our sole discretion. In the event of any payment under this policy, we shall be subrogated to the extent of such payment to all of your rights of recovery and you shall execute all papers required and shall do everything that may be necessary to secure such rights.

**5. Other Insurance**

No other insurance shall be effected by you to protect the interest insured hereunder without our prior written approval.  In the event that such other insurance is effected, this insurance shall be excess of such other policy of insurance.

**6. Premium**

As a condition precedent to coverage provided under this policy, the premium must be paid on or before the premium due date shown on the Declarations corresponding each **insured event**.  The premium is fully earned as of the commencement date of the **insured event** under the policy and will not be returned by us.

**7. Cancellation**

This policy may not be cancelled by you or us, except that we may cancel in the event of your failure to pay the premium when due.  In the case of such cancellation, all premium previously received by us shall be deemed earned and no return premium shall payable to you.

**8. Assignment**

This policy may not be assigned in whole or in part without our prior written consent.

**9. Records**

You shall keep accurate records containing all relevant information and particulars of the **insured event**.  We reserve the right to audit your books and records in the event of a loss.

**10. Premium Not an Expense**

The premium paid on this policy is deemed not to be an **expense** in the assessment of any claim hereunder.

**11. Salvage and Recoveries**

All salvages, recoveries and payments excluding proceeds from subrogation recovered or received subsequent to a loss settlement under this policy shall be applied as if recovered or received prior to the said settlement and shall accrue entirely to us until the sum paid by us has been recovered.

**12. Conformity to Statute**

Terms of this policy in conflict with the written laws of any state in which this policy is issued, which are applicable to this policy, are changed to conform to such laws.

**13. Territory**

This policy covers **insured events** for which the **venue** is located worldwide.

**14. Obligation to Rearrange**

You have an obligation to use your best efforts to rearrange the any **insured event** that has been subject to **cancellation** or **abandonment** in order to mitigate any loss covered hereunder.

### 15. Headings

Headings used in this policy are for reference purposes only and are not intended to be a part of or to affect the meaning or interpretation of this policy.

### 16. Suit Against the Company

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law unless you have complied with all the provisions of this policy and unless commenced suit within twelve (12) months after the loss occurs.

### 17. Service of Suit

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Assured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States.

Nothing in this clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or any State in the United States.

It is further agreed that service of process in such suit may be made upon the person or firm named in the Schedule and that in any suit instituted against any one of them upon this Insurance, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The said person or firm is authorized and directed to accept service on behalf of Underwriters in any such suit and/or upon the request of the Assured to give a written undertaking to the Assured that he will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any law process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this Insurance, and hereby designate the person or firm named in the Schedule as the firm to whom the said officer is authorized to mail such process or a true copy thereof.

**This endorsement, effective 12:01 A.M.,**   June 22, 2018
**Forms a part of Policy No.:** 18/7009248
**Issued to:** The University of Notre Dame du Lac
**By:** Houston Casualty Company

### TERRORISM COVERAGE EXTENSION

#### SCHEDULE

This endorsement modifies insurance provided by the policy:

In consideration of the additional premium charged as shown in the above Schedule, Paragraph **3. Terrorism,** of **Section II – Exclusions** is deleted in its entirety.

All other terms and conditions of this policy remain the same.

**HOUSTON CASUALTY COMPANY**

**Authorized Representative**



## UNIVERSITY OF NOTRE DAME

August 10, 2020

Mr. Beam:  Sent Via E-Mail and Fed Ex
Mr. Schell:  Sent Fed Ex

Mr. John Beam, Director
Willis Towers Watson
Hearst Tower
214 North Tryon Street, Suite 2500
Charlotte, NC 28202

Mr. Michael Schell
Houston Casualty Company
13404 Northwest Freeway
Houston, Texas 77040

| | |
|---|---|
| RE: | Notre Dame Event Cancellation Insurance Policy |
| Insured: | The University of Notre Dame du Lac |
| Insurer: | Houston Casualty Company ("Carrier") |
| | Policy No. 18/7009248 (the "Policy") |

John,

I'm following up on the several phone calls that we have had and emails we have
exchanged over the last several months regarding Notre Dame's potential claim and loss
under the above-referenced Policy relating to the cancellation, abandonment,
curtailment, postponement or relocation of Notre Dame's 2020 football season.  There
are still many unknowns, but we felt that it was prudent at this time to formally provide
notice of events "likely to give rise to a claim under this [P]olicy." As you know, Notre
Dame has already had to cancel a number of games, and others may need to be
cancelled, abandoned, curtailed, postponed, curtailed or relocated in response to the
COVID19 pandemic and public health measures undertaken to control it.

Please forward this notice to the Carrier.  I would appreciate an
acknowledgement of receipt of this notice and a claim number from the Carrier. I am
also sending a copy of this letter directly to the Carrier in case it needs to receive the
notice directly from its policyholder.

At this time we do not know the exact specifics as to the full extent of the loss. We will provide additional information as we learn more. Specifically, the proposed revised Notre Dame football schedule is enclosed and we will provide further information when we learn more about whether, and how many, fans will be allowed into games. The proposed revised schedule demonstrates that Notre Dame took steps to arrange a complete and strong schedule of games and otherwise mitigate its losses, but there are many variables and factors outside of our control. In fact, the Mid-America Conference postponed all of their Fall 2020 sports on August 8, 2020, which precludes the Notre Dame – Western Michigan game on September 19, 2020. If you or the Carrier have specific questions or suggestions for us at this time, please let us know and we will do our best to address them. This situation, however, is both unprecedented and evolving, so our responses may be limited or conditional.

Sincerely,


Barb Davey

Enclosure

cc:     John Lloyd



**2020-21**

# FOOTBALL SCHEDULE

| · OVERALL | PCT | STREAK | HOME | AWAY | NEUTRAL |
|---|---|---|---|---|---|
| 0 - 0 | 0.000 | N/A | 0 - 0 | 0 - 0 | 0 - 0 |

*All Times Eastern*

| APR 18 | **BLUE-GOLD GAME** NOTRE DAME, IND. | **CANCELLED** (Home) |
|---|---|---|
| SEP 12 | **DUKE** NOTRE DAME, IND. | 🕐 **TBA** (Home) |
| SEP 19 | **WESTERN MICHIGAN** NOTRE DAME, IND. | 🕐 **TBA** (Home) |
| SEP 26 | **WAKE FOREST** | 🕐 **TBA** (Away) |
| OCT 10 | **FLORIDA STATE** NOTRE DAME, IND. | 🕐 **TBA** (Home) |
| OCT 17 | **LOUISVILLE** NOTRE DAME, IND. | 🕐 **TBA** (Home) |
| OCT 24 | **PITTSBURGH** | 🕐 **TBA** (Away) |
| OCT 31 | **GEORGIA TECH** ATLANTA, GA. (BOBBY DODD STADIUM) | 🕐 **TBA** (Away) |
| NOV 7 | **CLEMSON** NOTRE DAME, IND. | 🕐 **TBA** (Home) |
| NOV 14 | **BOSTON COLLEGE** | 🕐 **TBA** (Away) |
| NOV 27 | **NORTH CAROLINA** | 🕐 **TBA** (Away) |
| DEC 5 | **SYRACUSE** NOTRE DAME, IND. | 🕐 **TBA** (Home) |
| TBA | **ACC CHAMPIONSHIP** CHARLOTTE, N.C. (BANK OF AMERICA STADIUM) | 🕐 **TBA** (Neutral) |
| JAN 1 | **COLLEGE FOOTBALL PLAYOFF SEMIFINAL** | 🕐 **TBA** (Neutral) |
| JAN 11 | **CFP NATIONAL CHAMPIONSHIP** MIAMI, FLA. (HARD ROCK STADIUM) | 🕐 **TBA** (Neutral) |

*All Times Eastern*

© 2020 The University of Notre Dame. All rights reserved.

**49D01-2104-PL-013118**

Marion Superior Court 1

Filed: 4/19/2021 1:40 PM
Clerk
Marion County, Indiana

**ENDORSEMENT NUMBER**          **4**

**Attaching to and forming part of Houston Casualty Company Policy No. 18/7009248**

                         Assured:      The University of Notre Dame du Lac

                         **It is hereby noted and agreed that:**

**The 2020 Schedule of Insured Events is added to the policy as attached.**

**The Limit of Insurance is amended to read as follows:**

$187,200,000 in all.

**The Definition of Gross Revenue is amended to read as follows:**

The definition of gross revenue in SECTION III – DEFINITIONS is amended as follows:

Gross revenue means ticket revenue and premium seating ticket revenue only arising out of the insured event, as per the attached budget.

**In consideration of the above, the Additional Premium is:**

$242, plus $6.05 IN Surplus Lines Tax

                    **All other terms and conditions remain unchanged.**

**Additional Premium:**          N/A
**Return Premium:**              N/A
**Effective Date:**              June 1, 2020
**Date of Issue:**               June 16, 2020

                              **HOUSTON CASUALTY COMPANY**

                    **By** _____

                              **Authorized Representative**

Attaching to and forming part of
Houston Casualty Company Policy No. **18/7009248**
Schedule of Insured Events
Page 1 of 2

### 2018 SCHEDULE OF INSURED EVENTS

| Insured Event | Event Date(s) | Premium Due Date | Venue | Limit of Insurance |
|---|---|---|---|---|
| 1) Michigan | 9/1/2018 | Item 5-Declarations | Notre Dame Stadium, 2010 Moose Krause Cir, Notre Dame, IN 46556 | $12,000,000 |
| 2) Ball State | 9/8/2018 | Item 5-Declarations | Notre Dame Stadium, 2010 Moose Krause Cir, Notre Dame, IN 46556 | $7,200,000 |
| 3) Vanderbilt | 9/15/2018 | Item 5-Declarations | Notre Dame Stadium, 2010 Moose Krause Cir, Notre Dame, IN 46556 | $7,200,000 |
| 4) Stanford | 9/29/2018 | Item 5-Declarations | Notre Dame Stadium, 2010 Moose Krause Cir, Notre Dame, IN 46556 | $8,500,000 |
| 5) Pittsburgh | 10/13/2018 | Item 5-Declarations | Notre Dame Stadium, 2010 Moose Krause Cir, Notre Dame, IN 46556 | $8,500,000 |
| 6) Florida State | 11/10/2018 | Item 5-Declarations | Notre Dame Stadium, 2010 Moose Krause Cir, Notre Dame, IN 46556 | $12,000,000 |
| 7) Syracuse | 11/17/2018 | Item 5-Declarations | Yankee Stadium, 1 E 161st St, Bronx, NY 10451 | $5,200,000 |

$60,600,000

### 2019 SCHEDULE OF INSURED EVENTS

| Insured Event | Event Date(s) | Premium Due Date | Venue | Limit of Insurance |
|---|---|---|---|---|
| 1) New Mexico | 9/14/2019 | Item 5-Declarations | Notre Dame Stadium, 2010 Moose Krause Cir, Notre Dame, IN 46556 | $8,500,000 |
| 2) Virginia | 9/28/2019 | Item 5-Declarations | Notre Dame Stadium, 2010 Moose Krause Cir, Notre Dame, IN 46556 | $9,500,000 |
| 3) Bowling Green | 10/5/2019 | Item 5-Declarations | Notre Dame Stadium, 2010 Moose Krause Cir, Notre Dame, IN 46556 | $8,500,000 |
| 4) USC | 10/12/2019 | Item 5-Declarations | Notre Dame Stadium, 2010 Moose Krause Cir, Notre Dame, IN 46556 | $12,000,000 |
| 5) Virginia Tech | 11/2/2019 | Item 5-Declarations | Notre Dame Stadium, 2010 Moose Krause Cir, Notre Dame, IN 46556 | $9,500,000 |
| 6) Navy | 11/16/2019 | Item 5-Declarations | Notre Dame Stadium, 2010 Moose Krause Cir, Notre Dame, IN 46556 | $8,500,000 |
| 7) Boston College | 11/23/2019 | Item 5-Declarations | Notre Dame Stadium, 2010 Moose Krause Cir, Notre Dame, IN 46556 | $9,500,000 |

$66,000,000

## 2020 SCHEDULE OF INSURED EVENTS

| Insured Event | Event Date(s) | Premium Due Date | Venue | Limit of Insurance |
|---|---|---|---|---|
| 1) Arkansas | 9/12/2020 | Item 5- Declarations | Notre Dame Stadium, 2010 Moose Krause Cir, Notre Dame, IN 46556 | $9,467,130 |
| 2) W. Michigan | 9/19/2020 | Item 5- Declarations | Notre Dame Stadium, 2010 Moose Krause Cir, Notre Dame, IN 46556 | $7,347,433 |
| 3) Shamrock Series (Lambeau) | 10/3/2020 | Item 5- Declarations | Lambeau Field, 1265 Lombardi Avenue, Green Bay, WI 54304 | $13,575,926 |
| 4) Stanford | 10/10/2020 | Item 5- Declarations | Notre Dame Stadium, 2010 Moose Krause Cir, Notre Dame, IN 46556 | $9,846,360 |
| 5) Duke | 10/31/2020 | Item 5- Declarations | Notre Dame Stadium, 2010 Moose Krause Cir, Notre Dame, IN 46556 | $7,490,933 |
| 6) Clemson | 11/7/2020 | Item 5- Declarations | Notre Dame Stadium, 2010 Moose Krause Cir, Notre Dame, IN 46556 | $12,448,668 |
| 7) Louisville | 11/21/2020 | Item 5- Declarations | Notre Dame Stadium, 2010 Moose Krause Cir, Notre Dame, IN 46556 | $6,791,333 |

**First Loss Limit of $60,600,000 for 2020 Schedule of Insured Events**

Notre Dame 2020 - Gross Revenue Budget

| Game | Date | Ticket Revenue | Premium Seating Ticket Revenue | Combined Revenue |
|---|---|---|---|---|
| Arkansas | 9/12/2020 | $ 7,755,570 | $ 1,711,560 | $ 9,467,130 |
| W. Michigan | 9/19/2020 | $ 5,635,873 | $ 1,711,560 | $ 7,347,433 |
| Shamrock Series (Lambeau) | 10/3/2020 | $ 13,575,926 | $ - | $ 13,575,926 |
| Stanford | 10/10/2020 | $ 8,134,800 | $ 1,711,560 | $ 9,846,360 |
| Duke | 10/31/2020 | $ 5,779,373 | $ 1,711,560 | $ 7,490,933 |
| Clemson | 11/7/2020 | $ 10,737,108 | $ 1,711,560 | $ 12,448,668 |
| Louisville | 11/21/2020 | $ 5,079,773 | $ 1,711,560 | $ 6,791,333 |
| | | | | |

**49D01-2104-PL-013118**

Marion Superior Court 1

Filed: 4/19/2021 1:40 PM
Clerk
Marion County, Indiana



**TOKIO MARINE
HCC**

Specialty Group
401 Edgewater Place, Suite 400
Wakefield, MA 01880 USA
Tel: 781-994-6000  Fax: 781-994-6001

February 22, 2021

**BY EMAIL AND FEDEX**  Trent.A.Grocock.1@nd.edu

Mr. Trent Grocock
Vice President for Finance
University of Notre Dame
415 Main Building
Notre Dame, Indiana 46556

|     |     |     |
| --- | --- | --- |
| Re: | **Insured:** | University of Notre Dame du Lac |
|     | **Date of Loss:** | Various |
|     | **Claim Number:** | 17315 |
|     | **Policy Number:** | 18/7009248 (06/22/18 to 06/222/20) |

Dear Mr. Grocock:

## I.     NOTICE OF RESERVATION OF RIGHTS

Houston Casualty Company ("HCC") is reviewing University of Notre Dame du Lac's ("Notre Dame") claim for coverage under the above-referenced Event Cancellation Policy (the "Policy") for losses incurred during the 2020 football season due to the COVID-19 pandemic (the "Claim").  HCC is investigating the Claim under a reservation of rights.  Please be advised that any actions taken by HCC or its representatives during the investigation shall not waive or invalidate any of HCC's rights under the Policy. HCC expressly reserves the right to assert all policy provisions that may apply to the Claim.

## II.     THE POLICY AND THE CLAIM

### A.     The Policy

HCC issued an Event Cancellation Policy to Notre Dame, bearing policy number 18/7009248, which was effective from June 22, 2018 to December 31, 2020. The Policy includes a Schedule of Insured Events Endorsement that lists seven insured football games scheduled to take place during the 2020 college football season (the "Insured Events").  The Policy provides a $60,600,000 first loss limit of coverage for 2020 events, subject to a per event Limit of Insurance for each of the Insured Events.  The 2020 Schedule of Insured Events Endorsement provides, in pertinent part:

A member of the Tokio Marine HCC group of companies


TOKIO MARINE
HCC

## SCHEDULE OF INSURED EVENTS

| Insured Event | Event Date(s) | Premium Due Date | Venue | Limit of Insurance |
|---|---|---|---|---|
| 1) Arkansas | 9/12/2020 | Item 5 - Declarations | Notre Dame Stadium, 2010 Moose Krause Cir. Notre Dame, IN 46556 | $9,467,130 |
| 2) W. Michigan | 9/19/2020 | Item 5 - Declarations | Notre Dame Stadium, 2010 Moose Krause Cir. Notre Dame, IN 46556 | $7,347,433 |
| 3) Shamrock Series (Lambeau) | 10/3/2020 | Item 5 - Declaration | Lambeau Field, 1265 Lombardi Avenue, Green Bay, WI 54304 | $13,575,926 |
| 4) Stanford | 10/10/2020 | Item 5 - Declarations | Notre Dame Stadium, 2010 Moose Krause Cir. Notre Dame, IN 46556 | $7,490,933 |
| 5) Duke | 10/31/2020 | Item 5 - Declarations | Notre Dame Stadium, 2010 Moose Krause Cir. Notre Dame, IN 46556 | $12,448,668 |
| 6) Clemson | 11/7/2020 | Item 5 - Declarations | Notre Dame Stadium, 2010 Moose Krause Cir. Notre Dame, IN 46556 | $12,448,668 |
| 7) Louisville | 11/21/2020 | Item 5 - Declarations | Notre Dame Stadium, 2010 Moose Krause Cir. Notre Dame, IN 46556 | $6,791,333 |

The Policy provides:

The Policy provides as follows:

## SECTION I – INSURING AGREEMENT

### A.    EVENT CANCELLATION

We will indemnify you, up to the combined Limit of Insurance, for your loss as a direct result of **cancellation, abandonment, curtailment, postponement,** or **relocation** of the **insured event** to which this insurance applies.

### B.    APPLICATION OF COVERAGES:

In order for insurance to apply to Section I, all of the following conditions must be met:

**1.**    The loss must be the direct result of an unexpected cause beyond your control;



2.    the loss must not be the direct or indirect result of any excluded cause as shown in Section II., -Exclusions of this insurance; and

3.    you must comply with all other terms and conditions of this policy.

## C.    CALCULATION OF LOSS

Subject to the limit of insurance, we will indemnify you for the greater of:

1.    The total of **expenses** incurred, less any recoveries obtained, and less **gross revenue** retained after refunds, whether such refunds are contractual or voluntary; or

2.    The loss of **gross revenue** (including gross revenue returned, whether contractual or voluntary) that would have been received had the **insured event** taken place as originally scheduled, less any recoveries made and **expenses** not incurred.

It is understood and agreed by us that a game appearance guarantee paid by You to a non- conference school shall be considered an expense hereunder whether it is paid contractually or on a voluntary basis regardless of any contractual agreement between You and such non-conference school.

## D.    EXTENSIONS OF COVERAGE:

**Extra Expense** — If a loss applies, this policy is extended to include direct and necessary additional expenses incurred by you over and above the total costs that would normally have been incurred to conduct the insured event in order to continue the normal operations of the insured event, subject to prior written approval by us. The Limit of insurance for this coverage is included in the Limit of Insurance shown in the Declarations. However, in the event the Limit of Insurance is exhausted, we will pay an additional limit, up to $100,000 or a higher amount if agreed to by us and evidenced by endorsement attached to and forming a part of this Policy.

**Travel Expenses to Away Games** — If an away or neutral-site game You are scheduled to play in (whether such game is an insured event scheduled under this policy or not) is subject to cancellation, abandonment, curtailment, postponement, or relocation for reasons covered under this policy, this policy is extended to include the loss of expenses incurred by You directly related to travel to such away or neutral-site game. The Limit


**TOKIO MARINE**
**HCC**

of Insurance for this coverage is sub-limited to $250,000 per loss and $1,000,000 in all.

\* \* \*

## SECTION II – EXCLUSIONS

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

\* \* \*

6.      **Lack of Support**

    **a.**      Lack of adequate response, support or withdrawal of such support by any entity;

    **b.**      Lack of, or inadequate attendance or insufficient interest prior to attendance.

\* \* \*

## SECTION III - DEFINITIONS

1.      **Abandonment** means your inability to keep the **insured event** during a period subsequent to regularly scheduled date and time of commencement of the **insured event**.

2.      **Cancellation** means your inability to commence the **insured event** at the regularly scheduled date and time of commencement of the **insured event**.

3.      **Curtailment** means your inability to open or keep open **the insured event** for its original published duration, size or scope.

4.      **Expenses** means your costs and charges in organizing, running and providing services for the **insured event**. **Gross revenue** means all monies paid or payable to you from every source arising out of the **insured event**.

5.      **Insured event(s)** means the event or events covered by this policy as shown in the Declarations or in the attached schedule of insured events.

 **TOKIO MARINE**
**HCC**

6. **Postponement** means the unavoidable deferment of the **insured event** to another time.

7. **Relocation** means the removal of the **insured event** to an alternative **venue**.

8. **Venue** means the location corresponding to the **insured event** where the **insured event** is scheduled to occur as shown in the Declarations

\* \* \*

## SECTION IV - CONDITIONS

### 1. Limits of Insurance

The most we will pay for loss or damage is the applicable Limit of Insurance shown in the Declarations.

\* \* \*

Endorsement 4 to the Policy provides:

The 2020 Schedule of Insured Events is added to the policy as attached.

**The Limit of Insurance is amended to read as follows:**

$187,200,000 in all.

**The Definition of Gross Revenue is amended to read as follows:**

The definition of gross revenue in SECTION III – DEFINITIONS is amended as follows:

Gross Revenue means ticket revenue and premium seating ticket revenue only arising out of the insured event, as per the attached budget.

\* \* \*

### B. The Claim

Notre Dame submitted the Claim to HCC for the loss of gross revenue sustained due to the impact of the COVID-19 pandemic on the 2020 college football season. Notre Dame is seeking coverage under the noted policy for: (i) the 2020 replacement games, which proceeded without fans; (ii) the cancellation of the Shamrock Series game, which was scheduled to take place at Lambeau Field; and (iii) extra expenses incurred to mitigate losses.


TOKIO MARINE
HCC

By correspondence dated November 16, 2020, Notre Dame provided HCC's independent adjuster, Premier Insurance Services ("Premier"), with information regarding the Claim. Notre Dame noted that despite the COVID-19 pandemic, Notre Dame was able to arrange and complete a strong schedule of games.[1] Nevertheless, local restrictions passed by the St. Joseph County Department of Health limited attendance at Notre Dame home football games to only 15,000 people, including support staff and participants. HCC's investigation has also confirmed that the October 3, 2020 Shamrock Series game against Wisconsin was eliminated from Notre Dame's schedule due to the Big Ten Conference's decision to cancel all non-conference games.

Exhibit A to the November 16, 2020 correspondence is a spreadsheet that avers that Notre Dame sustained $89,520,259 in lost revenue. That amount is divided into three categories: (i) Lost Ticket Revenue ($72,850,674); (ii) Lost Game Day Revenue ($9,145,410); and (iii) Lost Football Weekend Revenue ($7,524,175). Exhibit A to the November 16, 2020 correspondence also claims that Notre Dame incurred $2,048,280 in extra expenses to minimize further losses and saved $10,700,269 in expenses.

### III.    RESERVATION OF RIGHTS

The Policy covers "loss as a direct result of cancellation, abandonment, curtailment, postponement, or relocation of the insured event to which this insurance applies." The Policy defines "loss" as the greater of Notre Dame's "expenses incurred, less any recoveries obtained, and less gross revenue retained after refunds," or Notre Dame's "loss of gross revenue … that would have been received had the insured event taken place as originally scheduled, less any recoveries made and expenses not incurred." And finally, the Policy defines gross revenue as "ticket revenue and premium seating ticket revenue only arising out of the insured event …."

Notre Dame's initial loss calculation includes non-ticket related revenue. The Game Day Revenue category contemplates income from, *inter alia*, broadcast television and radio revenue, stadium tours, hospitality suites, commissions, parking, guarantees and concessions. Moreover, the Other Football Weekend Revenue incorporates revenue from bookstore operations, licensing, catering, venues, hotels and campus dining. The Policy covers only gross revenue generated from ticket sales. HCC's loss calculation will therefore not include Game Day Revenue or Other Football Weekend Revenue that is unrelated to ticket sales.

The Policy covers extra expense, which is the "direct and necessary expenses incurred by [Notre Dame] over and above the total costs that would normally have been incurred to conduct the insured event in order to continue the normal operations of the insured event, subject to prior written approval by" HCC. Notre Dame claims it incurred $2,048,280 in extra expenses for ACC required medical testing, football summer housing, and quarantine and isolation housing.

---

[1] Notre Dame ultimately played ten regular season games and two post-season games.


**TOKIO MARINE**
**HCC**

To the extent that HCC determines that the foregoing is covered under the Policy, HCC calculation of loss will include only the prorated portion of those expenses that are directly attributed to Notre Dame's six home games.

## IV.   CONCLUSION

HCC understands that Premier is awaiting receipt of additional information and documents from Notre Dame so that HCC can complete its loss adjustment. HCC reserves its right to disclaim coverage for the Claim, in whole or in part.  Once HCC completes its investigation, HCC will inform you of the status of the Claim.  No act or conduct of HCC or its agents, employees and representatives shall be deemed a waiver or estoppel of HCC's legal or contractual rights in this matter. HCC maintains the legal and contractual right to file a declaratory judgment action to determine the extent of HCC's coverage obligation under the Policy, should such action become necessary.

If you have any documents or information that might impact HCC's coverage obligations, please provide them to us immediately.

If you have any questions, please contact me.

Very truly yours,

*Lorna K Gillespie*

Lorna Gillespie
Director of Contingency & SHEL Claims

Cc;  John Beam, Willis Towers Watson
        Michael Tocicki, Premier Insurance Services